**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

QUENTIN DEWAYNE JONES,    )
    )
         Petitioner,    )
    )
v.    )      **No. CIV-15-1237-HE**
    )
**JASON BRYANT, Warden**    )
    )
         Respondent.    )

## REPORT AND RECOMMENDATION

State prisoner Quentin Jones has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state court conviction. (ECF No. 1). Mr. Bryant has filed his Response to Petition for Writ of Habeas Corpus. (ECF No. 13). For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I.    BACKGROUND

On January 11, 2012, a confidential informant working with the Enid police department purchased drugs as part of an undercover operation. Following the transaction, Enid police officials secured a search warrant for Room #27 of the Holiday Motel in Enid. Upon entering the room, police officials found three individuals—Petitioner, Lacy Barnard, and Dejuanta Jones—along with various drugs, a cell phone, a wallet containing $650.00 and an ID bearing Petitioner's name and picture, legal documents bearing Petitioner's name, and a box of baggies.

On January 24, 2012, Mr. Jones was charged with: (1) felony trafficking in illegal drugs, (2) felony possession of a controlled dangerous substance (subsequent offense),

and (3) misdemeanor unlawful possession of drug paraphernalia.[1] On July 27, 2012, Petitioner filed a Motion for a Speedy Trial (O.R. 19-21). On September 16, 2013, Petitioner waived his right to a speedy trial.[2] A jury trial commenced on December 2, 2013.[3]

At trial, Enid Police Officer Zeke Frazee and Detective Greg Liebl testified. (Trial TR. 147-202). According to Detective Liebl, the undercover informant contacted an individual via cell phone to arrange a drug buy and ultimately purchased drugs using twenty dollar bills from which Enid police officials had recorded the serial numbers. (Trial TR. 158-159). Following the drug transaction, Officer Frazee testified that he conducted surveillance on Room #27 at the Holiday Motel while Detective Liebl prepared a search warrant for that location. (Trial TR. 199). During the surveillance, Officer Frazee witnessed approximately five cars arrive at Room #27, each staying for under three minutes. (Trial TR. 200). Officer Frazee continued his surveillance until Detective Liebl arrived and executed a search warrant on the room. (Trial TR. 148-149, 200).

---

[1] *See* Notice of Completion of Record for Appeals from District Court, *Jones v. Oklahoma*, Appeal Case No. F-2013-1148 (Okla. Ct. Crim. App.) (Mar. 3, 2014) at 57 (O.R. ___).

[2] Transcript of Defendant's Waiver of Speedy Jury Trial Conducted September 16, 2013 Before the Hon. Dennis W. Hladik, District Judge in and for Garfield County, Oklahoma, *State of Oklahoma v. Jones*, Case No. CF-2012-51 (Garfield Co. Sept. 16, 2013) (Waiver of Speedy Trial TR. ___).

[3] Transcript of Proceeding Conducted December 2nd and 3rd, 2013 (Jury Trial) Before the Honorable Paul K. Woodward, District Judge, in and for Garfield County, Oklahoma, *State of Oklahoma v. Jones*, Case No. CF-2012-51 at 147-202 (Garfield Co. Dec. 2 & 3, 2013) (Trial TR. ____).

Inside the room, Detective Liebl testified that he observed two beds with a nightstand in between. (Trial TR. 149-151). Petitioner and Ms. Barnard were on one of the beds and Mr. Dejuanta Jones was on the other bed. (Trial TR. 149-151, 183). Detective Liebl also observed "a large amount" of what he believed to be crack cocaine atop a set of digital scales on the nightstand. (Trial TR. 152). At that time, Ms. Barnard told Detective Liebl that the motel room was rented in her name. (Trial TR. 184). The three individuals were arrested and transported to the Garfield County Detention Facility while officers searched the room. (Trial TR. 152-53).

In addition to the crack cocaine found on the digital scales, officers found what they believed to be marijuana, methamphetamine, another crack cocaine rock, hydrocodone pills, a cell phone, a wallet which contained $650.00 and an ID card bearing Petitioner's picture and name, a box of sandwich baggies, and three legal documents bearing Petitioner's name. (Trial TR. 153, 157, 161, 162, 167-170). The suspected drugs were tested by the OBSI and confirmed to be at least 18.2 grams of marijuana, 18 grams of crack cocaine, 52 hydrocodone pills, a crack rock weighing .9 grams, and 7.9 grams of methamphetamine. (Trial TR. 164; 205- 212; State's Exhibit 1 & 33, Exhibits Admitted During Trial, *State of Oklahoma v. Jones*, Case No. 2012-15 (Garfield Co. Okla.). According to Detective Liebl, five of the twenty dollar bills found in the wallet with Petitioner's ID card contained serial numbers which corresponded with the pre-recorded bills that the undercover informant had used to purchase drugs approximately two hours before. (Trial TR. 158). Detective Liebl also testified that he

had evidence of text messages and phone calls between the confidential informant's phone and the cell phone found in Room #27. (Trial TR. 158-159, 187, 188).

As part of Mr. Jones' defense, his trial attorney, Jeff Crites, attempted to introduce two signed statements from Ms. Barnard dated 4/17/12 and 4/19/12, which affirmed that she was responsible for the crack and methamphetamine found in the room and that Mr. Jones had "nothing to do" with the drugs. (Trial Exhibits A & B). On the first morning of trial, Mr. Crites had attempted to subpoena Ms. Barnard testify regarding the statements, but she could not be located. (Trial TR. 217-218). Defense counsel moved for a continuance to locate Ms. Barnard but the trial court denied the request. (Trial TR. 218). Following the denial, Mr. Crites attempted to introduce the statements under an exception to the hearsay rule because Ms. Barnard was unavailable to testify. (Trial TR. 220-221). But without a foundation to authenticate the statements, the trial court overruled defense counsel's request. (Trial TR. 222).

On December 3, 2013, the jury convicted Petitioner on all three counts. (Trial TR. 245). On December 6, 2016, the trial court sentenced Mr. Jones to: (1) life without the possibility of parole on Count One, (2) 20 years imprisonment on Count Two, and (3) one year incarceration at the Garfield County Jail on Count Three.[4] The trial court ordered the sentences to run consecutively. *See* Sentencing TR. 3; O.R. 152-153. On November 20, 2014, the OCCA affirmed the conviction and on November 5, 2015, Mr. Jones timely filed his habeas petition. *See* ECF Nos. 13-3 & 1.

---

[4] *See* Transcript of Proceeding Conducted December 6th, 2013 (Sentencing) Before the Honorable Paul K. Woodward, District Judge, in and for Garfield County, Oklahoma, *State of Oklahoma v. Jones*, Case No. CF-2012-51 at 2-3 (Garfield Co. Dec. 6, 2013) (Sentencing TR. ___); O.R. 152-153.

As grounds for habeas relief, Mr. Jones alleges:

1.     Improper admission of other crimes evidence;

2.     The trial court failed to properly instruct the jury;

4.     The trial court improperly denied Mr. Jones' Motion for a Continuance, which deprived him of a fair trial;

5.     The trial court erred in excluding exculpatory statements from an unavailable witness;

6.     The trial court erred in failing to rule on Mr. Jones' Speedy Trial claim;

7.     A violation of Double Jeopardy;

8.     The trial court erred in ordering consecutive sentences; and

9.     Ineffective assistance of counsel.

(ECF No. 1).[5]

## II.   STANDARD OF REVIEW

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), this Court's power to grant habeas corpus relief to state prisoners is limited. *Snow v. Sirmons,* 474 F.3d 693, 696 (10th Cir. 2007). Under the AEDPA, the standard of review applicable to each claim depends upon how that claim was resolved by the state courts. *Alverson v. Workman,* 595 F.3d 1142, 1146 (10th Cir. 2010) (citing *Snow,* 474 F.3d at 696). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated

---

[5] In his Petition, Mr. Jones' grounds for relief are identical to his propositions for relief in his direct appeal brief. *Compare* ECF No. 1 *with* ECF No. 13-1. However, in his habeas Petition, Mr. Jones provides very little substantive argument. As a result, the undersigned has liberally construed the habeas Petition to incorporate the corresponding arguments as set forth in the direct appeal brief.

the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Under the AEDPA, a petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (1996). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

Review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170 (2011). "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted).

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 559 U.S. 43, 47 (2010). If clearly

established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens,* 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself." *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "there was no reasonable basis for the state court's determination." *Id.* at 1242-43 (citation omitted).

In sum, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 562 U.S. at 101–02. Relief is warranted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* at 102. The deference embodied in § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citation omitted).

If the state appellate court has not addressed the merits of a claim, the Court exercises its independent judgment. *See Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) ("For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'" (citation omitted)). But "[a]*ny* state-court findings of fact *that bear upon the claim* are entitled to a presumption of correctness rebuttable only by 'clear and convincing evidence.'" *Hooks v. Workman*, 689 F.3d 1148, 1164 (10th Cir. 2012) (emphasis added) (quoting 28 U.S.C. § 2254(e)(1) (1996)).

## III.  OTHER CRIMES EVIDENCE (GROUND TWO)

In Ground Two, Petitioner challenges the trial court's evidentiary ruling which allowed the admission of "other crimes" evidence at his trial involving: (1) pre-recorded bills found in Petitioner's wallet which had been used in an undercover purchase of crack cocaine, (2) a cell phone found in the motel room which contained information pertaining to the undercover purchase of crack cocaine, and (3) testimony from Enid Police Officer Zeke Frazee who testified regarding what he observed during his

surveillance. (ECF Nos. 13-1:19-22; 16:13-16). On direct appeal, the Petitioner alleged that the admission of the evidence violated his Due Process rights under the 8th and 14th Amendments. (ECF No. 13-1:19-22). In denying relief however, the OCCA applied only Oklahoma law. (ECF No. 13-3:8-13). As a result, this Court must review Ground Two *de novo*. *See Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) ("Although Knighton did raise this constitutional due process argument on direct appeal, the Oklahoma appellate court did not specifically address it. We, therefore, review this habeas claim *de novo*.").

In doing so, the dispositive question is whether the trial court's admission of the evidence considered in light of the entire record, resulted in a fundamentally unfair trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This question, in turn, is answered by weighing the probative value of the evidence against the potential for prejudice. *See Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) ("[W]e will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law.") (citing *Duvall v. Reynolds*, 139 F.3d 768, 787 (10th Cir. 1998) (internal quotation marks omitted).

### A.    Evidence of the Pre-Recorded Bills and Cell Phone

Mr. Jones was charged with: (1) felony trafficking in illegal drugs in violation of 63 O.S. § 2-415, (2) felony possession of a controlled dangerous substance following a subsequent offense in violation of 63 O.S. § 2-402, and (3) misdemeanor unlawful possession of drug paraphernalia in violation of 63 O.S. § 2-405. (O.R. 1). Officers had

testified that: (1) the cell phone found in the room bore the same number that the confidential informant had used to arrange a drug buy just two hours before Mr. Jones' arrest and (2) part of the money in the wallet containing Petitioner's ID was used to make the undercover purchase. Mr. Jones complains that the evidence of the cell phone and pre-recorded bills was prejudicial, resulting in an unfair trial. The Court should disagree.

The OCCA has repeatedly allowed the admission of evidence of other crimes to prove motive, common scheme, identity, plan, knowledge, or absence of mistake or accident. *See, e.g., Huskey v. State,* 1999 OK CR 3, ¶ 3, 989 P.2d 1 at 3; *Douglas v. State,* 1997 OK CR 79, ¶ 72, 951 P.2d 651, 673. In this case, all three charged offenses required proof of knowledge as an element of the crime. *See* 63 O.S. § 2-415, 63 O.S. § 2-402, 63 O.S. § 2-405. Oklahoma Courts have allowed this type of other crimes evidence in support of the State's burden of proof, so long as the State complies with the procedural requisites of *Burks v. State*[6] and the trial court issues a contemporaneous and final limiting instruction to the jury. *Eizember v. State*, 2007 OK CR 29, ¶ 76, 164 P.3d 208 at 320. These requisites were met in the instant case.

*Burks* requires the State to give a pre-trial notice of the other crimes evidence it intends to introduce "to prevent surprise on the part of the defense and to allow time for the defense to be heard prior to the evidence being placed before the jury." *Warner v. State,* 2006 OK CR 40, ¶ 65, 144 P.3d 838, 868. Nearly three months prior to trial, the State provided Petitioner with a *Burks* notice stating that it intended to introduce

_____

[6] 1979 OK CR 10, 594 P.2d 771.

evidence of the cell phone and the pre-recorded bills. (O.R. 57-58). On the morning of trial, the court held a hearing on the issue and allowed the introduction of the other crimes evidence as set forth in the *Burks* notice, so long as the State did "not go beyond the bounds of what[] [was] contained within [the State's] Burks motion" and with the caveat that a limiting instruction would be provided with the other jury instructions. (Trial TR. 138-139). Thus, Mr. Jones cannot argue unfair surprise and the Court should conclude that the evidence was properly admitted to prove an element of the crimes and not did not result in a fundamentally unfair trial.

### B.    Officer Frazee's Testimony

Mr. Jones also argues that Officer Frazee's testimony regarding his surveillance of Room #27 two hours prior to the search warrant was "extremely prejudicial [and] not relevant to the issue of who possessed the drugs in the motel room." (ECF No. 13-1:28). Although Officer Frazee's testimony may not have been critical to proving the elements of the charged offenses, the testimony was properly allowed as *res gestae* of the entire crime. Evidence is properly admitted as *res gestae* if it "shed[s] light on what occurred." *Reyes v. State*, 1988 OK CR 50, 751 P.2d 1081, 1083. Here, Officer Frazee testified that for two hours, he watched Room #27 of the Holiday Motel and saw five cars arrive at that location and stay for less than three minutes, which he believed "indicate[d] drug activity. . ., the sale of narcotics." (Trial TR. 200). This evidence was allowed to shed light on the entire course of events that evening.

An undercover drug transaction had occurred with money which was later found in a wallet with Petitioner's ID, and Petitioner was found with drugs in the motel room

where Officer Frazee saw five cars arrive and stay for less than three minutes each. Officer Frazee's testimony concerning what he believed to be drug activity occurring at the location where Petitioner was subsequently found with incriminating evidence was thus admissible as part of the *res gestae* of the charged offenses for trafficking and possession of drugs and paraphernalia. While Officer Frazee's testimony was not included in the State's *Burks* notice, it was not required to have been. *See Reyes v. State,* 1988 OK CR 50, 751 P.2d 1081, 1083 (no *Burks* notice was required when the challenged evidence was a part of the *res gestae* of the crime charged). Thus, the Court should conclude, that the admission of Officer Frazee's testimony did not result in a fundamentally unfair trial to Mr. Jones. *See Holland v. Allbaugh*, 824 F.3d 1222, 1230 (10th Cir. 2016) (rejecting habeas petitioner's challenge to testimony that was properly admissible as part of the *res gestae* of the offenses, noting that the testimony did not render the trial fundamentally unfair).

In sum, the Court should conclude that the probative value of the "other crimes" evidence of the cell phone, the pre-recorded money, and Officer Frazee's testimony clearly outweighed any potentially prejudicial effect and did not render his trial fundamentally unfair. Accordingly, Petitioner is not entitled to habeas relief on Ground Two.

## IV.    FAILURE TO GIVE A JURY INSTRUCTION (GROUND THREE)

In Ground Three, Mr. Jones argues that the trial court erred in failing to *sua sponte* give a jury instruction which stated that merely standing by, or acquiescing to a crime, even with knowledge concerning the commission of a crime, does not make a

person a principal to a crime. (ECF Nos. 1:8; 13-1:31-33; 16:16-18). According to Petitioner, his defense at trial was that Ms. Barnard possessed and was responsible for the drugs and that he was a mere "bystander." (ECF No. 13-1:23-25). Although defense made no request for a "bystander" instruction, Mr. Jones believes the absence of the instruction rendered his trial fundamentally unfair because had it been given, he would have likely been acquitted. (ECF Nos. 13-1:23-25; 16:16-18). The OCCA rejected this claim, stating that "[t]here was simply no evidence to support a defense that Appellant was a mere bystander to Barnard's possession of the drugs" considering that:

1. Ms. Barnard was one of three individuals found in the motel room containing the drugs,

2. Ms. Barnard was not physically close to the drugs found on and in the nightstand nor was her personal identification found on or near the nightstand containing the drugs,

3. Money from an earlier controlled buy was not found in her wallet,

4. Ms. Barnard did not testify at trial, and

5. Mr. Jones did not testify.

(ECF No. 13-3:14). The OCCA's decision was consistent with Supreme Court precedent.

An argument regarding whether a trial court's jury instruction is sufficient under state law is not a basis for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Instead, the appropriate question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). As a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction, the burden on Mr. Johnson is especially great. *Tyler v. Nelson,* 163 F.3d 1222, 1227 (10th Cir. 1999). This is because

"[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* (internal quotations omitted) (quoting *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977)). Here, omission of the "bystander" instruction did not render the trial fundamentally unfair.

Although Petitioner states that his defense was that he had nothing to do with the drugs and that Ms. Barnard had complete control and possession of the drugs, the jury was not privy to this theory and the evidence at trial does not otherwise support this defense. Ms. Barnard did not testify and her statements regarding sole responsibility for the drugs were not admitted into evidence. The only evidence that the jury heard regarding Ms. Barnard's involvement in the crime was that she was one of three individuals found in the motel room where the drugs were found and that she told Detective Liebl that she had rented the room.

The trial court was only required to instruct the jury on the applicable law based on the evidence presented at trial. *Soriano v. State*, 2011 OK CR 9, ¶ 36, 248 P.3d 381, 396. Because the jury heard no evidence that Petitioner was merely a "bystander" to the crimes and that Ms. Barnard was solely responsible, the Court should conclude that the absence of a "bystander" instruction did not render the trial fundamentally unfair as to violate due process. *See Johnson v. Ward*, 78 F. App'x 100, 102 (10th Cir. 2003) (trial court's failure to give an instruction did not render the trial fundamentally unfair because habeas petitioner "failed to present sufficient evidence to warrant [the] instruction"); *see also Lujan v. Tansy,* 2 F.3d 1031, 1036 (10th Cir. 1993) (habeas petitioner not entitled to relief for the failure to give an instruction, even if there *was*

sufficient evidence to warrant the instruction). Accordingly, habeas relief is not warranted on Ground Three.

## V.     THE TRIAL COURT'S DENIAL OF A CONTINUANCE (GROUND FOUR)

After the State rested its case, and outside the presence of the jury, Mr. Jones' attorney moved to continue the trial to locate Ms. Barnard, whom he believed to be a key defense witness. (Trial TR. 216). According to Mr. Crites, Ms. Barnard's presence was critical to the defense in light of the court's earlier ruling that had excluded Ms. Barnard's written statements which averred her sole responsibility for the drugs found in the motel room. (Trial TR. 216-217). Earlier that morning (the first day of trial) Mr. Crites had attempted to subpoena Ms. Barnard to testify, but the process server was unable to locate the witness. (Trial TR. 218). The trial court denied defense counsel's request for a continuance and trial resumed, with Mr. Jones calling no witnesses. (Trial TR. 218, 222).

According to Petitioner, the trial court's denial of a continuance, which effectively disallowed Ms. Barnard's testimony, violated his Sixth Amendment right to present witnesses on his behalf and in support of his defense.  (ECF Nos. 1:10; 13-1:34-37; 16:16-23). Petitioner presented the constitutional issue on direct appeal, but the OCCA rejected the claim only applying state law. *See* ECF No. 13-3:14-16. Thus, the Court should review the issue *de novo*.

### A.     The Sixth Amendment Right to Compulsory Process

The Sixth Amendment right to compulsory process does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all

witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor.*'"
*United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 (1982) (quoting U.S. Const.,
Amend. VI (emphasis in original)).

Certainly, "the state may not arbitrarily deny a defendant the ability to present
testimony that is 'relevant and material, and . . . vital to the defense.'" *Young v.
Workman*, 383 F.3d 1233, 1238 (10th Cir. 2004) (quoting *Valenzuela–Bernal,* 458 U.S.
at 867). Nevertheless, a habeas petitioner must show his trial was fundamentally unfair
if he is to establish a violation of his compulsory process, fair trial, or due process
rights. *See Valenzuela–Bernal,* 458 U.S. at 872 ("[i]n order to declare a denial of
[fundamental fairness] we must find that the absence of that fairness fatally infected
the trial; the acts complained of must be of such quality as necessarily prevents a fair
trial"). It is the materiality of the excluded evidence to the presentation of the defense
that determines whether a petitioner has been deprived of a fundamentally fair trial. *Id.*
at 867-869. More than the mere absence of testimony is necessary to establish a
violation of the Sixth Amendment. *Id.* The complaining party "must at least make some
plausible showing of how [the missing witness'] testimony would have been both
material and favorable to his defense. *Id.* at 868.

**B.    No Violation of Petitioner's Sixth Amendment Rights**

Under Oklahoma law, joint constructive possession of illegal drugs can be proven
by circumstantial evidence of dominion and control of the location where the drugs
were found "as long as there is proof the defendant knowingly and willfully shared the
right to control the dangerous substance." *White v. State*, 1995 OK CR 15, 900 P.2d

982, 986. In the instant case, even if Ms. Barnard had testified that she was solely responsible for the drugs, sufficient evidence existed to prove that Mr. Jones had constructive possession of the drugs at issue, which was all that was required under the law for a conviction. Mr. Jones was found in a motel room where the drugs were located, a wallet bearing his ID card contained money which had been used in a controlled drug buy just two hours prior, and "nexus" evidence found in the motel room indicated that Petitioner lived in the motel room. *See supra*. In addition, if Ms. Barnard had testified that she was solely responsible for the drugs, she would have likely been impeached by Petitioner's letters to her from jail telling her to claim that the drugs were hers. Transcript of Hearing on Defendant's Knowledge of Plea Offer Conducted November 25, 2013 Before the Hon. Dennis W. Hladik, District Judge in and for Garfield County, Oklahoma, *State of Oklahoma v. Jones*, Case No. CF-2012-51 at 5 (Garfield Co. Okla. Nov. 23, 2013).

Material evidence is "that which is exculpatory—evidence that if admitted would create reasonable doubt that did not exist without the evidence." *Young*, 383 F.3d at 1238 (citing *Valenzuela–Bernal,* 458 U.S. at 868). Evidence is material if its suppression might have affected the trial's outcome. *Valenzuela–Bernal,* 458 U.S. at 868. Here, Ms. Barnard's testimony was not exculpatory to the charges against Mr. Jones. Furthermore, the State would have likely impeached Ms. Barnard regarding her handwritten statements which claimed sole responsibility for the drugs. The trial court's denial of a continuance effectively disallowed only a potential defense and the presence of a witness whose testimony was neither material nor vital to the defense.

Accordingly, the Court should conclude the trial court's denial of the continuance did not result in a fundamentally unfair trial or otherwise violate Petitioner's due process rights and habeas relief is not warranted on Ground Four.

## VI.    THE TRIAL COURT'S EXCLUSION OF EVIDENCE (GROUND FIVE)

As part of Mr. Jones' defense, his attorney attempted to introduce two signed statements from Ms. Barnard dated 4/17/12 and 4/19/12, which affirmed that she was responsible for the crack and methamphetamine and Mr. Jones had "nothing to do" with the drugs. (Trial Exhibits A & B). As discussed, Mr. Crites had attempted to subpoena Ms. Barnard to testify regarding the statements, but she could not be located. (Trial TR. 217-218). Following the trial court's denial of defense counsel's motion for a continuance to locate Ms. Barnard, Mr. Crites attempted to introduce the statements under an exception to the hearsay rule because Ms. Barnard was unavailable to testify. (Trial TR. 220-221). But without a foundation to authenticate the statements, the trial court overruled defense counsel's request. (Trial TR. 221).

Mr. Jones alleges that the trial court's exclusion of the statements violated his Sixth Amendment rights to Compulsory Process and Confrontation and the right to present a defense. (ECF Nos. 1:11; 13-1:38-42; 16:23-28). Citing Supreme Court precedent, the OCCA rejected this claim, stating that exclusion of the evidence did not deny Mr. Jones his constitutional right to present a defense in light of: (1) the statements' inadmissibility under an exception to the hearsay rule, (2) the fact that Ms. Barnard's claim of ownership was not dispositive of Mr. Jones' guilt as he could have still been found guilty of joint possession, and (3) the likelihood that the statements

would have been impeached. (ECF No. 13-3:16-18). The OCCA's decision was not contrary to, nor an unreasonable application of, Supreme Court precedent.

### A. No Violation of the Sixth Amendment Right to Compulsory Process

As stated, the Sixth Amendment right to compulsory process guarantees a defendant 'compulsory process for obtaining *witnesses in his favor.*'" *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 (1982) (quoting U.S. Const., Amend. VI (emphasis in original)). However, to establish a violation of his compulsory process rights, a habeas petitioner must show his trial was rendered fundamentally unfair through the deprivation of material witness testimony. *See Valenzuela–Bernal,* 458 U.S. at 872.

As discussed, Ms. Barnard's statements regarding her sole responsibility for the drugs was not material to Petitioner's defense because he could have still been found guilty of joint possession. *See supra*. Absent a showing that the statements were material to Petitioner's defense, Mr. Jones' trial was not rendered fundamentally unfair as a result of the trial court's decision to exclude the evidence.

### B. No Violation of the Sixth Amendment Right to Confrontation

The "main and essential" purpose of the Sixth Amendment's Confrontation Clause "is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal quotation marks and citation omitted). Mr. Jones argues that the trial court's exclusion of Ms. Barnard's statements violated his Sixth Amendment right to Confrontation. (ECF No. 13-1:41-42). But this argument does not present a valid Sixth Amendment claim, as it concerns the

introduction of testimony from Petitioner's *own* witnesses, which would not implicate the Sixth Amendment. *See Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (explaining that the denial of the right to present defense-witness testimony "is a right arising not under the Sixth Amendment's Confrontation Clause but is instead one arising under the Fifth and Fourteenth Amendment right to due process . . .").

### C.      No Violation of the Fifth Amendment Right to Present a Defense

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois,* 484 U.S. 400, 408 (1988). Mr. Jones' right to present a defense is guaranteed by the Fifth and Fourteenth Amendments. *See Washington v. Texas,* 388 U.S. 14, 18–19 (1967) ("[t]he right to offer the testimony of witnesses . . .  is in plain terms the right to present a defense . . . . This right is a fundamental element of due process of law."). To establish a violation of his right to present a complete defense, Petitioner must show that evidence would have been material and favorable to his defense. *United States v. Valenzuela–Bernal,* 458 U.S. 858 (1982).

As discussed, Ms. Barnard's written statements were not material to the outcome of Petitioner's trial. The OCCA concluded the same. *See* ECF No. 13-3:17 ("Even if [Ms. Barnard's] statements had been admitted, [Mr. Jones] could still have been found guilty of possessing the drugs jointly with Barnard."). The absence of materiality is fatal to Mr. Jones' habeas claim. *See Dunn v. Scott*, 117 Fed. Appx. 49 (10th Cir. Nov. 16, 2004) (unpublished op.) (holding that the OCCA's decision affirming the trial court's exclusion of evidence was not contrary to, nor an unreasonable application of Supreme Court

precedent because the habeas petitioner "failed to establish how disclosure of these statements would have helped his defense."). Accordingly, the Court should deny habeas relief on Ground Five.

## VII.  DENIAL OF A SPEEDY TRIAL (GROUND SIX)

In Ground Six, Mr. Jones alleges a violation of his Sixth Amendment right to a speedy trial. *See* ECF Nos. 1:11; 13-1:43-45. The OCCA rejected this claim on direct appeal. (ECF No. 13-3:18-19). The OCCA's decision was consistent with Supreme Court precedent.

### A.  Standard of Review for a Violation of the Right to a Speedy Trial

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. Amend. VI. The United States Supreme Court has refused to "quantif[y] the right 'into a specified number of days or months' or to hinge the right on a defendant's explicit request for a speedy trial. *Vermont v. Brillon*, 556 U.S. 81, 89-90 (2009) (*citing Barker v. Wingo*, 407 U.S. 514, 522-25 (1972)). Rather, the right must be evaluated under the particular circumstances of each case using a balancing test which weighs the conduct of both the government and the defendant. *See id.* Relevant factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (internal quotation marks omitted). No one factor is determinative; rather, the factors must be considered together with such additional circumstances as may be relevant. *Barker*, 407 U.S. at 533.

**B.      No Violation of Petitioner's Right to a Speedy Trial**

As grounds for his Speedy Trial claim, Mr. Jones states: "Petitioner's conviction must be reversed with instructions to dismiss because he was deprived of a fair trial. The state was in fundamental error in its reading and in the standard applied in judging petitioner's speedy trial claim." (ECF No. 1:11). Liberally construing Mr. Jones' habeas petition to incorporate his argument on direct appeal, Petitioner alleges a violation of his Sixth Amendment right to a speedy trial due to: (1) the trial court's failure to rule on Petitioner's motion for a speedy trial and (2) the nearly two-year delay between when charges were filed and his trial date. (ECF No. 13-1:43-45). The OCCA rejected these claims, stating:

> When reviewing a claim of the denial of the constitutional right to a speedy trial, we apply the four balancing factors established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right, and (4) prejudice to the defendant. These are not absolute factors, but are balanced with other relevant circumstances in making a determination.

> Approximately 14 months after Appellant's motion for speedy trial was filed, the defense appeared before the trial judge to request a continuance in order to obtain a copy of the preliminary hearing transcript before proceeding to trial. The judge specifically asked Appellant if he was waiving his right to a speedy trial. Appellant responded in the affirmative. At the point, the parties addressed potential trial dates. After discussing the court's schedule and that of both counsel, the dates of November 18, December 2 and January 27, 2014 were listed as potential trial dates. The judge personally asked Appellant if those dates met his approval. Appellant agreed to those dates. The trial court granted the defense request for a continuance and trial ultimately commenced on December 2, 2013.

> While Appellant may have initially asserted his right to speedy trial, he eventually waived that right. Now on appeal, Appellant admits it is difficult to know exactly what prejudice resulted by the court's failure to

grant his motion. We agree and find no indication in the record of any prejudice to Appellant. Accordingly, we find Appellant was not denied his right to a speedy trial and this proposition is denied.

(ECF No. 13-3:18-19) (internal citations omitted). The OCCA's determination was not contrary to Supreme Court law.

As stated, when considering Mr. Jones' speedy trial claim, four factors must be considered. The first factor, length of delay, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. *at* 530. A delay approaching one year typically meets this requirement. *See Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992). The length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment. *United States v. Marion,* 404 U.S. 307, 320-21 (1971). Mr. Jones was arrested on January 11, 2012 and his trial began on December 2, 2013. This delay, exceeding one year, was presumptively prejudicial. *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006). Thus, the Court should consider the remaining factors.

Under the second factor—the reason for delay—"different weights should be assigned to different reasons." *Barker,* 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* (footnote omitted). Petitioner filed his Motion for a Speedy Trial on July 27, 2012. (O.R. 19). Two days later, Mr. Jones' counsel filed a motion to withdraw from the case due to his client's breach of the fee agreement. (O.R. 17). The next day, the preliminary hearing was scheduled, but was postponed due to defense counsel's

withdrawal and the court's appointment of a new attorney.[7] The preliminary hearing was scheduled on November 20, 2012, but was rescheduled to January 14, 2013 because defense counsel had a conflict of interest and a new counsel was appointed.[8] On January 14, 2013, the preliminary hearing was rescheduled to April 5, 2013, but the record does not indicate why.[9] On April 5, 2013, the State requested a continuance and the preliminary hearing was moved to May 17, 2013.[10] At that time, the defense requested a continuance and the hearing was moved to May 28, 2013.[11] On that date, defense counsel requested another continuance and the preliminary hearing was ultimately held on July 17, 2013.[12] After probable cause was found at the preliminary hearing, a formal arraignment was held on August 14, 2013 and at that time the case was set for trial on September 23, 2013.[13] At a discovery conference held one week prior to the scheduled trial date, defense counsel asked for a continuance because he had not received the preliminary hearing transcript from the State. At this point, the trial court asked Mr. Jones if he was "waiving his right to a speedy hearing at this point" to which Mr. Jones replied affirmatively.[14]

---

[7] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[8] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[9] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[10] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[11] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[12] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[13] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

[14] Waiver of Speedy Jury Trial TR. 2.

During the year between the time Petitioner filed for a speedy trial and his preliminary hearing, only one continuance can be attributed to the State. The State's failure to provide a copy of the preliminary hearing transcript to defense counsel one week prior to the scheduled hearing date is significant, but at that point, Mr. Jones affirmatively waived his right to a speedy trial which lessens the weight accorded against the State for its failure to provide discovery. The second *Barker* factor does not favor Mr. Jones.

The third *Barker* factor—whether the defendant asserted his right to a speedy trial—examines whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch. *See Barker,* 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."). During the nearly two-year delay, Petitioner's first counsel withdrew due to Mr. Jones' violation of the fee agreement, Petitioner's second counsel withdrew due to a conflict of interest, and Mr. Jones requested two continuances.[15] This evidence weighs against Mr. Jones. *See United States v. Dirden,* 38 F.3d 1131, 1138 (10th Cir. 1994) (finding that the third factor weighed against a defendant who moved for a continuance and acquiesced when the trial date was vacated twice); *United States v. Tranakos,* 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.").

---

[15] http://www.oscn.net/dockets/GetCaseInformation.aspx?db=garfield&number=CF-2012-51

In addition, just two weeks prior to the originally scheduled trial date of September 23, 2013, Petitioner sought new counsel.[16] Although the trial court denied the motion, Mr. Jones' actions weigh against his desire to have his trial heard with dispatch, as a new counsel would need additional time to prepare for trial. And finally, the most indicative example of Mr. Jones' indifference to having his trial heard with dispatch is his waiver in open court of his right to a speedy trial. (Waiver of Speedy Jury Trial TR. 2). The sum of the evidence indicates that the third *Barker* factor weighs against Mr. Jones.

The fourth *Barker* factor is prejudice to the defendant. Prejudice is presumed where there is extreme delay, but where the delay is not extreme a defendant must make a particularized showing of prejudice. *See United States v. Tombs,* 574 F.3d 1262, 1275 (10th Cir. 2009). "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *United States v. Seltzer,* 595 F.3d 1170, 1179 (10th Cir. 2010). Here, Mr. Jones admits that "it is difficult to know exactly what prejudice resulted in the failure to grant the motion for speedy trial" because the trial court never held a hearing on Mr. Jones' Motion. (ECF No. 13-1:36). But no hearing was required, as Mr. Jones affirmatively waived his right to a speedy trial. The final *Barker*, factor, prejudice, weighs against Mr. Jones.

Evaluating all four *Barker* factors, as the OCCA did, the Court should conclude that the OCCA's denial of Mr. Jones' speedy trial claim was not contrary to, or involved

---

[16] Transcript of Defendant Requesting New Counsel Conducted September 10, 2013 Before the Hon. Dennis W. Hladik, District Judge in and for Garfield County, Oklahoma, *State of Oklahoma v. Jones*, Case No. CF-2012-51 (Garfield Co. Sept. 10, 2013).

an unreasonable application of, clearly established Federal law. As a result, Mr. Jones is not entitled to habeas relief on Ground Six.

## VIII. DOUBLE JEOPARDY (GROUND SEVEN)

Mr. Jones was convicted of trafficking in illegal drugs (cocaine) in violation of 63 O.S. § 2-415 and possession of controlled dangerous substances (marijuana, methamphetamine and hydrocodone) in violation of 63 O.S. § 2-402. (Trial TR. 245). Mr. Jones alleges that his convictions for trafficking and possession violated the Fifth Amendment's prohibition against double jeopardy because the crimes involved a single transaction--the possession of four different controlled dangerous substances. (ECF Nos. 1:11-12; 13-1:46-52, 16:30-32). According to Petitioner, if the amount of the cocaine possession had been less than that required to charge him with trafficking cocaine, he would have only been charged with one count of possessing four different controlled dangerous substances. (ECF No. 13-1:46-52, 16:30-32). In addressing Petitioner's claim, the OCCA conducted a "traditional double jeopardy analysis" under *Blockburger v. United States*, 284 U.S. 299 (1932). (ECF No. 13-3: 21-22). In doing so, the OCCA rejected Petitioner's claim, stating:

> This Court exclusively applies the "same evidence" test in its analysis of a double jeopardy claim. Under this test, we determined whether the crimes were separate and distinct crimes with totally dissimilar elements and whether each crime requires proof of elements not contained in the other.
>
> While the crimes of trafficking and possession both involve the element of possession, trafficking has a minimum quantity of the controlled substance which must be proven while simple possession does not. *See* 63 O.S. 2011 §§ 2-415 and 2-402. Appellant's convictions for a trafficking offense and simple possession based upon different controlled

substances are separate and distinct crimes requiring no dissimilar proof. Accordingly, any double jeopardy crime fails.

(ECF No. 13-3:21-22) (internal citations omitted). The OCCA's analysis was consistent with Supreme Court precedent.

In *Blockburger v. United States,* 284 U.S. 299, (1932), the United States Supreme Court articulated the "same evidence" test to evaluate an alleged violation of Double Jeopardy: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. The "same evidence" test requires the Court to determine whether Mr. Jones' convictions for trafficking and possession require different or the same factual elements of proof. As noted by the OCCA, "While the crimes of trafficking and possession both involve the element of possession, trafficking has a minimum quantity of the controlled substance which must be proven while simple possession does not." (ECF No. 13-3:22). The OCCA's analysis is correct. *Compare* 63 O.S. § 2-415 *with* 63 O.S. § 2-402.

The OCCA correctly analyzed Petitioner's claim under *Blockburger* and concluded that the Oklahoma statutes for possession and trafficking under which Petitioner was convicted each required proof of an element that the other did not. As a result, no double jeopardy violation occurred. Because the OCCA's decision was consistent with Supreme Court precedent, the Court should deny habeas relief on Ground Seven.

## IX.    CONSECUTIVE/EXCESSIVE SENTENCES (GROUND EIGHT)

Following the convictions, the trial court sentenced Mr. Jones to consecutive sentences of: (1) life without the possibility of parole on Count One, (2) 20 years imprisonment on Count Two, and (3) one year incarceration at the Garfield County Jail on Count Three. (Sentencing TR. 2-3; O.R. 152). On direct appeal, Petitioner argued that the life without parole sentence "assure[d] that Mr. Jones will either die in prison or be a very old man before he is released." (ECF No. 13-1:53). Accordingly, Mr. Jones asserted that the trial court had abused its discretion in ordering the sentences to run consecutively, in violation of Mr. Jones' Due Process rights. (ECF No. 13-1:53-54). The OCCA rejected Petitioner's claim, stating: (1) the life without parole sentence was within the statutorily prescribed range of punishment for trafficking and (2) running the sentences in Counts Two and Three consecutive to the first sentence did not result in an excessive sentence and did not, therefore, result in a violation of Due Process. (ECF No. 13-3:23). The OCCA's determination was reasonable.

### A.    Standard of Review for Claim of Excessive Sentence

The Eighth Amendment's prohibition against imposition of cruel and unusual punishment requires that the sentence cannot be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *Solem v. Helm,* 463 U.S. 277, 284 (1983). The guiding rule is that the fixing of penalties for crimes is a legislative function, and the determination of what constitutes adequate punishment is left to the trial court's discretion; and if the sentence is within statutory limits, the appellate court will not regard it as cruel and unusual or excessive. *United States v. O'Driscoll,* 761 F.2d

589, 599 (10th Cir. 1985) (citations omitted). In order for a petitioner to be entitled to federal habeas relief based on an excessive sentence, he must show that "the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel,* 222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted).

## B. No Excessive Sentence

The Amended Information in this case showed that Petitioner had been previously convicted of four felonies prior to the felonies charged in Counts One and Two. (O.R. 3-4). As a result of the prior felonies, Mr. Jones could be sentenced to life without the possibility of parole on Count One, 20 years imprisonment on Count Two and 1 year incarceration on Count Three. *See* 63 O.S. §§ 2-415(D)(3); 2-402, & 2-405. Therefore, because Petitioner's sentence fell within the authorized statutory range, the Court should reject Petitioner's excessive sentence claim, and conclude that it was not disproportionate to the crime to cause constitutional concerns. The OCCA reached this conclusion and the Court should accord deference to that decision. Accordingly, habeas relief should be denied on Ground Eight.

## X. INEFFECTIVE ASSISTANCE OF COUNSEL (GROUND ONE)

In Ground One, Mr. Jones alleges that his trial counsel was ineffective for:

1. Failing to present evidence that Ms. Barnard was solely responsible for the drugs,

2. Failing to request a jury instruction,

3. Failing to object to the introduction of other crimes evidence,

4. Failing to argue that Mr. Jones had been denied a speedy trial,

5. Failing to object on grounds of Double Jeopardy, and

6. Telling the jury that Mr. Jones was guilty of the crimes.

(ECF Nos. 1:5; 13-1:13-26; 16:3-13). The OCCA denied relief on all six grounds. (ECF No. 13-3:2-7). The OCCA's decision is not contrary to, nor an unreasonable application of, Supreme Court precedent.

## A.    Standard of Review for Claim of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the accused must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the accused must overcome the strong presumption that counsel's conduct fell outside of the wide range of professional conduct, including trial strategy. *Id.* at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. But on habeas review, the Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter,* 562 U.S. 86, 101 (2011). Instead, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Id.* The Court should answer this question affirmatively.

## B.    No Ineffective Assistance of Counsel

As stated, the OCCA rejected Mr. Jones' allegations that his defense counsel rendered ineffective assistance. (ECF No. 13-3:2-8). The OCCA's rejection of the first five allegations was premised on a finding that the substantive underlying claims were

without merit. (ECF No. 13-3:2-8). The OCCA's determination was consistent with Supreme Court authority.

As to Petitioner's allegations that defense counsel failed to present evidence that Ms. Barnard was solely responsible for the drugs, the OCCA stated: "Appellant has failed to show how he was prejudiced by any of counsel's shortcomings or by the absence of Barnard's testimony." (ECF No. 13-3:5-6). Regarding the specific failure to introduce Ms. Barnard's letters into evidence, the OCCA found that the letters were hearsay and did not fall under any exception for admission into evidence. (ECF No. 13-3:6). Regarding Mr. Crites' failure to request a "bystander" instruction, the OCCA stated: "We will not find counsel ineffective for failing to request a jury instruction not warranted by the evidence." (ECF No. 13-3:6-7). Regarding the introduction of other crimes evidence, the OCCA held that defense counsel "would not be found ineffective for failing to raise an objection which would have been overruled." (ECF No. 13-3:8). As to counsel's alleged failure to argue a denial of a speedy trial, the OCCA rejected the claim based on Mr. Jones' voluntary waiver of his right to a speedy trial. (ECF No. 13-3:8). Finally, Regarding the allegations of Double Jeopardy, the OCCA rejected Mr. Jones' claim, stating: "the crimes were separate and distinct offenses for which Appellant could be prosecuted. We will not find counsel ineffective as any objection would have been overruled." (ECF No. 13-3:8).

As discussed, the trial court did not err in failing to allow evidence that Ms. Barnard was solely responsible for the drugs or allow a "bystander" jury instruction. Furthermore, the admission of the other crimes evidence was proper, Mr. Jones

voluntarily waived his right to a speedy trial, and no violation of Double Jeopardy occurred. As a result, Petitioner cannot demonstrate that he was prejudiced as a result of his defense attorney's actions related to these claims. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (concluding that the petitioner could not show prejudice based on a trial counsel's failure to assert a particular argument because the argument was without merit); *Miller v. Mullin,* 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance") (quotation omitted). Accordingly, the Court should conclude that the OCCA properly applied *Strickland* and habeas relief is not warranted.

The Court should also defer to the OCCA's decision regarding Mr. Jones' allegation that his trial attorney was ineffective for telling the jurors that he was guilty. The challenged statement occurred during closing arguments, when defense counsel stated: "So when you go upstairs, I'm asking you to use your common sense and find my client not guilty of trafficking, okay? He did not possess those drugs alone, there's three trails." (Trial TR. 242). The OCCA rejected Mr. Jones' argument that defense counsel's comments were improper, stating: "Looking to the closing argument in its entirety, he argued that there were three people in that motel room and that the drugs could have belonged to any of the three. We find nothing improper in counsel's argument." (ECF No. 13-3:7).

As discussed, Petitioner was prevented from introducing evidence from Ms. Barnard regarding her sole responsibility for the drugs. However, Mr. Jones' direct appeal and habeas petition makes it clear that the crux of his defense was Ms.

Barnard's possession and control of the drugs. As a result, defense counsel's statement was part of trial strategy to deflect guilt from Petitioner, rather than highlight it. In that context, the Court should defer to the OCCA's decision and conclude that the statement was not improper. *See Ashley v. Trani*, No. 14-CV-00239-REB, 2014 WL 6680605, at *13-14 (D. Colo. Nov. 25, 2014) (rejecting habeas petitioner's claim of ineffective assistance of counsel, concluding that defense counsel's comments during closing arguments which pointed to his client's guilt were part of trial strategy).

In sum, the Court should conclude that the OCCA's conclusions regarding Mr. Jones' claims of ineffective assistance of counsel were consistent with Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on Ground One.

## XI.    RECOMMENDATION

It is recommended that Mr. Jones' Petition for Writ of Habeas Corpus be **DENIED**.

## XII.   NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **November 28, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XIII. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on November 9, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE